AUTO-OWNERS INSURANCE COMPANY v CITY OF CLARE

Docket No. 96191. Decided July 29, 1994. On application by the plaintiffs for leave to appeal, the Supreme Court, in lieu of granting leave, vacated the orders of the Court of Appeals and the circuit court and remanded the case to the circuit court for further proceedings. Rehearing denied 447 Mich 1202.

Auto-Owners Insurance Company, Home Owners Insurance Company, and Farm Bureau Mutual Insurance Company, insurers at various times of the City of Clare, brought an action in the Clare Circuit Court against the city, seeking a declaration of their respective obligations to defend and indemnify the city in two underlying actions brought by Hatton Township and the Attorney General with regard to contamination caused by the city's landfill. Each policy contained a standard pollution exclusion clause with a sudden and accidental exception. The court, Kurt N. Hansen, J., held the case in abeyance pending the decision of the Supreme Court in *Polkow v Citizens Ins Co,* 438 Mich 174 (1991). Thereafter, the court determined, as a threshold matter, that at issue was the release of contaminants from the landfill, not the city's initial action in placing potential pollutants into the landfill. It found that because contamination of ground water is pollution within the everyday usage of the term, the exclusionary language applied; however, because there was a question of fact regarding whether the contamination was sudden and accidental, and because *Polkow* requires any doubt regarding the duty to defend to be resolved in favor of the insured, the insurers were required to defend the city until it was determined whether they were obligated to indemnify the city. The Court of Appeals, WAHLS, P.J., and SULLIVAN and BRENNAN, JJ., in lieu of granting leave to appeal, issued a peremptory order remanding the matter to the circuit court to determine whether there was a genuine issue regarding the suddenness of the contamination (Docket No. 152495). On remand, the circuit court found that neither party had shown the absence of a genuine issue of material fact. The Court of Appeals then vacated its initial order, and again remanded the case, directing the circuit court to address whether there were

genuine issues regarding the temporal element required for a discharge to be sudden. The insurers seek leave to appeal.

In an opinion per curiam, signed by Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

As a matter of law, the sudden and accidental exception to the pollution exclusion is inapplicable in this case.

The phrase "sudden and accidental" is unambiguous. The word "sudden" includes both a temporal element and a sense of the unexpected; the word "accidental" means unexpected and unintended. In this case, there is no issue regarding the source of the contamination, nor is there any doubt that the city must have expected contamination to occur. Thus, the sudden and accidental exception is inapplicable. Because the underlying claims arguably are not even within the coverage extended by the insurers, the circuit court erred in determining that uncertainty regarding the applicability of the sudden and accidental exception warranted a finding that the plaintiffs were obliged to defend the city.

Vacated and remanded.

Justice LEVIN, dissenting, stated that peremptory reversal should be reserved for cases in which the law is settled and no factual assessment is required. In this case, factual and legal assessment is required, and peremptory disposition is not appropriate. The Court of Appeals did not err in remanding the case to the circuit court to address whether there are genuine issues regarding the temporal element for a discharge to be sudden.

Chief Justice CAVANAGH, dissenting, concurred with Justice LEVIN and would deny leave to appeal.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Anthony S. Kogut*), and *Linsey, Strain & Worsfold, P.C.* (by *Larry D. VanderWal*), for the plaintiffs.

*Bicknell & Winter* (by *Jack L. Winter*) and *Varnum, Riddering, Schmidt & Howlett* (by *Matthew D. Zimmerman* and *Mark S. Allard*), Special Counsel, for the defendant.

PER CURIAM. The plaintiffs are insurance companies that seek a declaratory judgment concerning their obligations to a municipality that they in-

sure. In circuit court, they sought summary disposition of their claim that the insurance contracts exclude coverage under the circumstances of this case. The circuit court denied summary disposition, but the Court of Appeals ordered the circuit court to reconsider the plaintiffs' motion.

We hold that the circuit court erred in its interpretation of the policy language, and we vacate the Court of Appeals order and the order in which the circuit court denied the plaintiffs' motion for summary disposition.

I

This case concerns a landfill operated by the City of Clare in Hatton Township of Clare County.[1] The landfill began as a five-acre operation on a 79-acre parcel of land owned by a man named William Bauer. The City of Clare purchased the Bauer property, including the landfill, by a 1974 land contract. That year, the city began operating the landfill. The city received a warranty deed in 1975.

In 1974 and 1975, the city expanded the five-acre landfill to 28.3 acres. The Department of Natural Resources issued a permit to the city in 1974, allowing it to operate the landfill. Later, the permit was renewed through September 1979.

In 1978, the Legislature enacted the Solid Waste Management Act,[2] which repealed the prior act[3] under which the landfill had been licensed.

The landfill remained open, and was used by many persons. Among the users was the DNR itself, which occasionally disposed of trash from its parks

[1] This case has not been tried. However, the parties executed a stipulated statement of facts for the circuit court to use in its consideration of the plaintiffs' motion for summary disposition.

[2] 1978 PA 641, MCL 299.401 et seq.; MSA 13.29(1) et seq.

[3] 1965 PA 87, as amended MCL 325.291 et seq.; MSA 14.435(1) et seq.

and other facilities. This happened fourteen times between 1979 and 1984, with the DNR paying a total of $100.25 in fees.

Representatives of the DNR met with the Clare City Commission in June 1980. They informed the city that it needed either to upgrade the landfill and sign a compliance schedule, or to close the facility. In a follow-up letter, the DNR invited the city to "arrange a meeting with a prospective consultant to discuss details of required hydrogeological work . . . ."

In early October 1980, the DNR reminded the city that it did not have a license, and that it had not completed a required hydrogeologic survey.

Later in October 1980, the DNR told the city that the landfill did not meet the minimum requirements for licensure, and that substantial improvements would be necessary at the site in order to meet the minimum requirements. The DNR advised the city that it should be seeking other alternatives, and that it should be taking an active part in the solid waste management planning process then under way in Clare County.

The DNR again noted the lack of a license in January 1982, outlining the steps that would be necessary to gain one.

In May 1982, the DNR wrote to the city, saying that "adequate time has been provided for the city to determine its desire to continue operating the landfill." The DNR asked for a response to its earlier communications.

In December 1982, the DNR told the city that continued use of the landfill without monitoring could increase the seriousness of a contamination problem, if one existed.

Several years passed without the city completing the necessary hydrogeological study. Therefore the DNR requested and obtained the city's consent in

1985 to do the test itself. A July 1985 letter from the DNR stated the department's expectation that the landfill was contaminating ground water. This letter requested the city to close the landfill and cap the site, regardless of other DNR activities.

A June 1986 letter from the DNR explained that the department's hydrogeological investigations indicated contamination emanating from the landfill. The city was advised to terminate the landfill operation immediately. The DNR said that the unlicensed landfill must be closed and given an impermeable cap to prevent the generation of further leachate from the landfill. The DNR added that "other remedial actions" would also be necessary, and the city should retain an engineer to assist in the preparation of a DNR-approved closure plan.

During a subsequent meeting with representatives of the city in June 1986, DNR officials characterized the landfill as illegal and unlicensed. The city was told that the landfill was contaminating surface waters, and might also be polluting ground water. The city stated its recognition that the landfill was in a violation of state law, but indicated its desire to continue operation of the landfill until an alternative site could be located. The DNR, in turn, said that it would not permit the continued illegal operation of the landfill, and that the city needed to take immediate action to prevent what appeared to be contamination of both ground water and surface water.

In late June 1986, the DNR wrote to say that, because the city had failed to take "responsible action to resolve the unlicensed, illegal operation of the landfill," the DNR would not renew its 1985 offer to forgo recovering from the city the investigative costs.

In early July 1986, Hatton Township sued the

City of Clare,[4] alleging violations of the Solid
Waste Management Act and the Michigan Envi-
ronmental Protection Act.[5] In support of its com-
plaint, Hatton Township filed the affidavit of a
DNR toxicologist, who explained that two residen-
tial wells close to the landfill had been found to be
contaminated, and that other contaminants had
been detected in surface water seeping from the
landfill.

The following month, in August 1986, the Direc-
tor of the DNR issued a formal order to cease and
desist. The order recited the problems with the
dump, and the resulting contamination of surface
water and ground water. The city was ordered to
cease operation of the landfill immediately and to
begin making preparations to close the site and
clean up the contamination.

Later in August 1986, the Clare City Manager
answered a DNR question by projecting a volume of
approximately 65,000 cubic yards of waste ma-
terial entering the landfill in 1986.

In connection with the lawsuit filed by Hatton
Township, the circuit court entered a partial con-
sent judgment in December 1986. The city was
required to close the dump and cease its operation
by January 1, 1987. The city was also required to
complete a hydrogeological study to identify the
horizontal and vertical extent of the ground water
contamination.

A March 1987 letter from the DNR repeated that
the department had found that contamination had
been released at the landfill site. This letter noti-
fied the city of its potential liability, and encour-
aged the city to replace voluntarily the water

---

[4] *Hatton Twp v City of Clare,* Clare Circuit Court Docket No.
86-7650-CE. The DNR is an intervening plaintiff.

[5] MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*

supply for the two houses with contaminated wells.

The firm that the city had commissioned to conduct the hydrogeological investigation issued its report in May 1987. Two distinct regions of contamination were found in the aquifer underlying the landfill. It also was determined that drainage from the new fill area (which had been operating since 1974) could have traveled as far as 2,500 feet from its source.

The Attorney General filed a second suit against the city in October 1987.[6] The complaint alleged that, through its operation of the landfill, the city had caused environmental contamination and had violated several statutes.

The two suits were consolidated. In July 1988, the circuit court ordered the parties to take certain steps to ensure proper closing of the landfill. Another order required capping the landfill, the providing of potable water to the nearby residences, and other remedial steps.

II

During the years that these events were taking place, three companies had insured the city—Auto-Owners Insurance Company, Home Owners Insurance Company, and Farm Bureau Mutual Insurance Company.[7]

In September 1987, the city notified these carriers of the claims made against it in the *Hatton*

---

[6] *Attorney General v City of Clare,* Clare Circuit Court Docket No. 87-8108-CE.

[7] Various policies issued by Farm Bureau were in effect from April 24, 1972, through April 24, 1978. A Home Owners policy was applicable from July 1, 1978, to October 1, 1984. An Auto-Owners policy was likewise applicable from July 1, 1978, to October 1, 1984. (No issue has been raised concerning a possible gap in coverage during 1978.) Michigan Municipal Risk has apparently carried the city from October 1, 1984, to the present.

*Twp* suit, and of the claims that were going to be made in the *Attorney General* action. Two of the insurers—Auto-Owners and Farm Bureau—tendered a defense, with a reservation of rights that there is no coverage.

The three insurance companies each had issued policies that contained a standard pollution exclusion. However, there was a "sudden and accidental" exception to the exclusion. The policies stated that the coverage did not apply

> [t]o bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental . . . .

### III

Seeking to establish that they were obliged neither to provide the city a defense in *Hatton Twp* and *Attorney General,* nor to indemnify the city if it were found liable in those suits, the three insurance companies filed this action for declaratory judgment. The city counterclaimed for declaratory judgment, seeking a ruling that the insurers do bear these responsibilities.

The parties filed cross-motions for summary disposition, which the circuit court initially held in abeyance pending this Court's decision in *Polkow v Citizens Ins Co,* 438 Mich 174; 476 NW2d 382 (1991).

*Polkow* was decided in August 1991, together with two related cases. *Protective Nat'l Ins Co v*

*Woodhaven,* 438 Mich 154; 476 NW2d 374 (1991);
*Upjohn Co v New Hampshire Ins Co,* 438 Mich
197; 476 NW2d 392 (1991).

After this Court decided *Polkow, Woodhaven,*
and *Upjohn,* the circuit court again considered the
motions for summary disposition. In its opinion,
the court determined, as a threshold matter, that
this case concerns the release of contaminants
*from* the landfill, not the city's initial action in
placing potential pollutants *into* the landfill.

The circuit court then considered the pollution
exclusion in the plaintiffs' policies. It applies to
"the discharge, dispersal, release or escape
of . . . contaminants or pollutants into or upon
land, the atmosphere or any water course or body
of water . . . ." Because contamination of ground
water is pollution within the everyday usage of the
term, the circuit court found that the exclusionary
language applied in this instance.

However, under the exception to the pollution
exclusion, the exclusion "does not apply if such
discharge, dispersal, release or escape is sudden
and accidental." With regard to the "sudden and
accidental" exception, the court stated:

> The Court finds that there is an issue of fact as
> to whether the Defendant expected the contamina-
> tion from the landfill, and therefore there is a
> question as to whether the contamination was
> sudden and accidental within the meaning of the
> insurance policy. Although, pursuant to the im-
> puted-collective-knowledge standard set forth in
> *Upjohn,* the Defendant is responsible for the col-
> lective knowledge of its employees, it has not been
> conclusively demonstrated that Defendant's offi-
> cers and employees collectively possessed enough
> information to expect the contamination to occur.
> Pending the final resolution of this factual issue,
> the Court cannot make a determination as to

whether the Plaintiffs are obligated to indemnify the Defendant.

With regard to the duty to defend, the Supreme Court's opinion in *Polkow, supra,* makes it clear that the insurer has a duty to defend against any claim where coverage was even arguable. 438 Mich at 180. "[A]ny doubt pertaining to application of the duty to defend is to be resolved in favor of the insured." *Id.* The Court finds that Plaintiffs have a duty to defend and that their duty extends from the time they received notice of the underlying litigation until it is determined whether they are obligated to indemnify the Defendant. Partial summary disposition is hereby granted to the Defendant on the issue of the insurer's [sic] duty to defend.

For those reasons, the court denied the insurers' motion for summary disposition. The city's motion for summary disposition was partially granted— the circuit court required the plaintiffs to provide a defense in the two suits against the city.

The three insurers filed a joint application for leave to appeal in the Court of Appeals. In lieu of granting the application, the Court issued a peremptory order[8] that remanded the matter to the circuit court to address the question whether there was a genuine issue regarding the suddenness of the contamination.[9]

---

[8] Unpublished order of the Court of Appeals, entered October 26, 1992 (Docket No. 152495).

[9] The Court orders the circuit court pursuant to MCR 7.205(D)(2), to reconsider plaintiffs' motion for summary disposition in connection with the "sudden and accidental" exception to the pollution exclusion provisions in the insurance contracts. Although the circuit court has held that there are genuine issues of material fact in connection with the claim that the contamination was accidental, the court appears not to have addressed the question whether there is any genuine issue regarding the suddenness of the alleged contamination, i.e., whether the initial discharge occurred suddenly and abruptly or gradually.

The application for leave to appeal is otherwise denied for

The insurers filed a motion for rehearing or clarification. Before the filing of that motion, however, the circuit court responded to the Court of Appeals order by issuing a supplemental opinion.

After reiterating that this case arises from the release of contaminants *from* the landfill, not the placement of material *into* the landfill, the circuit court referred to the discussion in *Upjohn* regarding the meaning of the word "sudden." The circuit court said that, "in cases where contaminants are stored or contained to isolate them from the surrounding environment, the question of whether any subsequent leakage is 'sudden,' as that term is legally defined, is dependent upon whether it was expected."

The circuit court saw the "determinative issue" in this dispute as being "whether the Defendant City knew or should have known that the waste materials discharged into the landfill proximately caused contamination of underlying and nearby soils and groundwater." Regarding that question, the circuit court concluded that neither party had shown the absence of a genuine issue of material fact.

After the circuit court issued its supplemental opinion, the Court of Appeals vacated its initial order. However, it again remanded the case to the circuit court, this time directing the lower court to address "whether there are genuine issues regarding the temporal element required for a discharge to be sudden."[10]

---

failure to persuade the Court of the need for immediate appellate review.

This Court retains no further jurisdiction.

[10] The Court orders that the motion for rehearing is granted, and pursuant to MCR 7.205(D)(2) and MCR 7.216(A)(7) the November 6, 1992 order of the Clare Circuit Court is vacated

The insurance companies have filed a joint application in this Court for leave to appeal.

IV

Because we agree with the circuit court that this case involves the release of pollutants into land and water, the pollution exclusion applies unless the release was "sudden and accidental." The question whether the insurers may be obliged to indemnify the city thus turns on the applicability of the "sudden and accidental" exception.

The phrase "sudden and accidental" is unambiguous. *Upjohn* at 201, 206-208; *Woodhaven* at 167. The word "sudden" includes both a temporal element and a sense of the unexpected; the word "accidental" means unexpected and unintended. *Upjohn* at 201.

We conclude that when considered in its plain and easily understood sense, "sudden" is defined

and the case remanded for further consideration of plaintiffs' motion for summary disposition.

The exception to the pollution exclusion provision of the insurance contracts requires that a discharge be both sudden and accidental. In order for a discharge to be "sudden," the discharge must happen, come to be, or occur quickly, without warning or unexpectedly, or abruptly. *The Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). For a discharge to be sudden, "it must be *both* immediate *and* unexpected." *Id.* at 210, n 9. Although the circuit court has held that there are genuine issues of material fact regarding the unexpected or unintentional nature of the discharge, the court has not addressed the question whether there are genuine issues regarding the temporal element required for a discharge to be sudden.

This Court expresses no opinion regarding the circuit court's holding that the discharge at issue is not the initial placement of waste materials in the landfill, but rather the subsequent leakage of the materials from the landfill.

This Court retains no further jurisdiction. [Unpublished order of the Court of Appeals, entered March 4, 1993 (Docket No. 152495).]

with a "temporal element that joins together conceptually the immediate and the unexpected." [*United States Fidelity & Guaranty Co v Star Fire Coals, Inc,* 856 F2d 31, 34 (CA 6, 1988).] The common, everyday understanding of the term "sudden" is " 'happening, coming, made or done quickly, without warning or unexpectedly; abrupt.' " [*FL Aerospace v Aetna Casualty & Surety Co,* 897 F2d 214, 219 (CA 6, 1990).] "Accidental" means "[o]ccurring unexpectedly and unintentionally; by chance." *The American Heritage Dictionary: Second College Edition,* p 72. [*Upjohn* at 207-208.]

In *Upjohn,* a pharmaceutical company was producing an antibiotic. The process also caused two toxic by-products, which were pumped into a ten-thousand gallon storage tank. The amount of by-products in the tank was measured daily by an Upjohn employee.

On one particular day (August 16, 1982), the measurement of the tank showed a significant discrepancy from the amount that should have been there. Despite this indication of a leak, the tank remained in use for at least two additional weeks.

When it was determined that, indeed, there had been a leak from the tank, the issue arose whether the release was "sudden and accidental." This Court found that the exception did not apply. As a matter of law, Upjohn had sufficient information available to it on August 16, 1982, to expect that a chemical by-product was escaping from a leak in the tank. Further, Upjohn had sufficient information to expect that the release would continue until the tank no longer was being used. *Upjohn* at 212-213.

In analyzing the case, we emphasized that it did not require *knowledge* of a leak to take the case

outside the "sudden and unexpected" exception.
The fact that Upjohn must have *expected* the leak
was sufficient to remove the case from the "sudden
and unexpected" exception. *Upjohn* at 215, n 13.
We concluded:

> Since the release of chemical by-product was not
> unexpected, as a matter of law it cannot be "sud-
> den and accidental." Therefore, the pollution-
> exclusion clause does apply, and the Upjohn Com-
> pany is not entitled to coverage under the [insur-
> ance] policy. [*Upjohn* at 216-217.]

The same analysis applies in the present case.
While the city's expectation of environmental con-
tamination does not come from daily measure-
ments as in *Upjohn,* it is equally clear that the
City of Clare must have expected the release of
pollutants into nearby lands and waters. For
years, the DNR had been telling the city that the
landfill did not satisfy the requirements of law and
that the better course would be to close and seal
the site. When, after interminable delay in obtain-
ing the necessary test results, it was finally con-
firmed that both ground water and surface water
were contaminated, it was far too late for the city
to prevail on a claim that the release was un-
expected,[11] or that it was "sudden and accidental."

In *Polkow,* we denied summary disposition to
the insurer because there was some evidence that
the contaminants at issue may have been unre-

---

[11] Relying on an affidavit from its Superintendent of Public Works,
the city argues that its employees held the personal belief that the
landfill site was adequate and that no pollution would result. Further,
the employees intended no release of contaminants. We do not ques-
tion the good faith of the superintendent or his employees. The
question here is whether the release was "sudden and accidental"
within the meaning of the insurance policies, not whether the em-
ployees acted appropriately. Within the meaning of the policy, this
release was expected, not sudden and accidental.

lated to Mr. Polkow's business. Further, the record was unclear with regard to what had been discharged, or where. *Polkow* at 179-181. While uncertainties necessarily attend any case involving a release that occurs underground (and that therefore cannot be detected by ordinary observation), the present case is unlike *Polkow.*

It had long been evident that this landfill was not a proper site for the disposal of waste materials. In such a situation, it is not necessary that one be able to identify the hour when release first occurred, or the precise spot within the affected region where material first escaped.[12] Here, there is no issue regarding the source of the contamination. Neither, for the reasons previously explained, is there any doubt that the city must have expected these problems to occur.

We therefore hold, as a matter of law, that the "sudden and accidental" exception to the pollution exclusion is inapplicable in this case.

V

In *Polkow,* we explained that an insurer's duty to defend is broader than the duty to indemnify. It arises in instances in which coverage is even arguable, though the claim may be groundless or frivolous. *Polkow* at 178. See also *Woodhaven* at 159-160.

As indicated, we reject the city's proposed application of the "sudden and accidental" exception to

---

[12] The plaintiffs argue that there is an "initial discharge rule," *Woodhaven* at 160-163, and that the lower courts erred by failing to apply it in this case. That is, the plaintiffs want the analysis to focus on the city's placement of pollutants *into* an unlicensed landfill, rather than on the subsequent release of contaminants *from* the landfill. Since intentional disposal of material for years would certainly not be "sudden and accidental," the result in this case would be the same under either analysis. Thus, we do not reach the question.

the pollution exclusion. Further, we are unable to conclude that the underlying claims made in *Hatton Twp* and *Attorney General* are even arguably within the coverage extended to the city by the plaintiff insurers. As with the claims in *Woodhaven,* we can say that "[t]here is no doubt . . . whether coverage is possible. It is not." *Woodhaven* at 160.

Thus, the circuit court also erred in determining that uncertainty regarding the applicability of the "sudden and accidental" exception warranted a finding that the plaintiffs were obliged to offer a defense to the city.

### VI

For these reasons, we vacate the order of the Court of Appeals, and the order in which the circuit court denied the plaintiffs' motion for summary disposition on the issue of indemnity and granted partial summary disposition to the defendant on the issue of the insurers' duty to defend.

We remand this case to the circuit court for further proceedings consistent with this opinion.[13] MCR 7.302(F)(1).

BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

LEVIN, J. (*dissenting*). I would deny leave to appeal. I adhere to the view that peremptory reversal should be reserved for cases in which the law is settled and no factual assessment is re-

___

[13] This opinion concerns the pollution exclusion and the "sudden and accidental" exception. On remand, the parties may pursue other preserved but unresolved issues concerning the language of the policies.

quired.[1] In the instant case, as indicated in the per curiam opinion, factual and legal assessment is required. Peremptory disposition is not appropriate.

The majority "hold[s], as a matter of law, that the 'sudden and accidental' exception to the pollution exclusion is inapplicable in this case."[2] That holding, "as a matter of law," is based on the factual findings indicated by the words emphasized in the following paragraphs of the per curiam opinion:

> While the city's expectation of environmental contamination does not come from daily measurements as in *Upjohn* [*Co v New Hampshire Ins Co,* 438 Mich 197, 207; 476 NW2d 392 (1991)], it is *equally clear* that the City of Clare *must have expected* the release of pollutants into nearby lands and waters. *For years, the DNR had been telling the city* that the landfill *did not satisfy the*

[1] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting).

[2] *Ante,* p 15.

requirements of law and that the *better course* would be to close and seal the site. When, after *interminable delay* in obtaining the necessary test results, it was *finally confirmed* that both ground water and surface water *were contaminated,* it was *far too late* for the city to prevail on a claim that the release was unexpected, or that it was "sudden and accidental."

*   *   *

It had *long been evident* that this landfill *was not a proper site* for the disposal of waste materials. *In such a situation,* it is not necessary that one be able to identify the hour when release first occurred, or the precise spot within the affected region where material first escaped. Here, there is no issue regarding the source of the contamination. Neither, for the reasons previously explained, is there any doubt that the city *must have expected* these problems to occur.[3]

The Court of Appeals did not err in remanding the case to the circuit court to address the question "whether there are genuine issues regarding the temporal element required for a discharge to be sudden." I would, again, deny leave to appeal.

CAVANAGH, C.J. I concur with Justice LEVIN and would deny leave to appeal.