GELMAN SCIENCES, INC v FIDELITY & CASUALTY COMPANY

Docket No. 164382. Submitted June 21, 1995, at Detroit. Decided December 15, 1995, at 9:15 A.M.

Gelman Sciences, Inc., brought an action in the Washtenaw Circuit Court against Fidelity & Casualty Company and others, seeking to establish the defendant insurers' duty to defend and indemnify the plaintiff in several lawsuits brought against it for groundwater contamination. From 1966 to 1984, the plaintiff discharged contaminants into ponds that allegedly were designed for that purpose, but apparently leaked. In 1985, it was discovered that certain drinking water wells in the vicinity were contaminated and several lawsuits against the plaintiff resulted. The plaintiff brought this action, claiming that the defendants insured it from 1963 to 1969 under policies that required the defendants to defend and indemnify the plaintiff with respect to the underlying claims. The plaintiff contended that coverage was available because the contaminants were discharged when the policies were in effect. The defendants alleged that coverage under the policies, which specifically define an occurrence in terms of the results or consequences of a wrongful act, was triggered in 1985 when the contamination was discovered and therefore damage to which the insurance applied did not occur during the policy period. The court, Patrick J. Conlin, J., agreed and granted summary disposition for the defendants. The plaintiff appealed and the defendants cross appealed.

The Court of Appeals *held*:

Insurance coverage was triggered in this case when the environmental contamination was discovered in 1985. The trial court properly determined that the underlying claimants' injuries occurred when the contamination was first detected in 1985, that the injury to those claimants did not take place within the policy period, and that the defendants were not obligated to defend or indemnify the plaintiff. The accident in

REFERENCES

Am Jur 2d, Insurance §§ 555, 559.
See ALR Index under Pollution.

this case did not result in injury or damage during the policy period.

Affirmed.

INSURANCE — ENVIRONMENTAL CONTAMINANTS — PERIOD OF COVERAGE.

An insurer is not obligated to provide its insured coverage for damages resulting from environmental contaminants released by the insured continuously during the policy period but not discovered during that time where the policy defines a covered occurrence as an accident that results during the policy period in bodily injury or property damage; coverage is triggered when the damage resulting from the release of the contaminants manifests itself to the party claiming to have been injured.

*Cooper, Fink & Zausmer, P.C.* (by *David H. Fink, Barbara B. Vacketta,* and *Michael L. Caldwell*), for the plaintiff.

*Timmis & Inman* (by *Robert E. Graziani, Mark W. Peyser,* and *Bradley Knickerbocker*), for the defendants.

Before: MacKENZIE, P.J., and CORRIGAN and P. J. CLULO,* JJ.

MacKENZIE, P.J. Plaintiff Gelman Sciences brought this action seeking to establish defendants' duty to defend and indemnify it in several lawsuits brought against it for groundwater contamination. The trial court granted summary disposition for defendant insurers, and plaintiff appeals as of right. Defendants cross appeal the trial court's denial of their motion to strike the documentary evidence plaintiff submitted to establish the existence and terms of the alleged insurance policies. We affirm.

In 1966, plaintiff began using the chemical 1,4-dioxane in its manufacturing process. From about 1966 to 1984, its industrial wastewater was treated

* Circuit judge, sitting on the Court of Appeals by assignment.

through a system of treatment ponds that were designed to biodegrade organics. For two years in the late 1960s, treated water from one of the ponds discharged into a marshy area behind plaintiff's facility. At the Water Resources Commission's suggestion and with its approval, plaintiff stopped the overflow by dredging out the bottom of the pond and letting the water seep into the ground.

Unbeknownst to plaintiff, the pond treatment system did not biodegrade 1,4-dioxane. In late December 1985, the Washtenaw County Health Department discovered that certain drinking water wells in the vicinity of plaintiff's facility were allegedly contaminated by 1,4-dioxane. Several lawsuits against plaintiff followed.

Plaintiff claimed that defendants insured it from 1963 to 1969 under policies requiring the insurers to defend and indemnify it with respect to the underlying claims. Plaintiff asserted that the policies included the following provisions:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. BODILY INJURY
>
> B. PROPERTY DAMAGE
>
> To which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . .
>
> "Occurrence" means an accident, including injurious exposure to conditions, which *results, during the policy period, in bodily injury or property damage* neither expected nor intended from the standpoint of the insured. [Emphasis added.]

Plaintiff's position was that it was entitled to

coverage under defendants' policies because the 1,4-dioxane was discharged in the 1960s, when the policies were in effect. Defendants' position was that coverage was triggered in 1985, when the groundwater contamination was discovered. The trial court agreed with defendants and accordingly ruled that they had no duty to defend or indemnify plaintiff.[1]

In a line of cases culminating with *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395; 531 NW2d 168 (1995), our Supreme Court has developed a two-part test for determining whether damage for which an insured has become liable is a covered "occurrence." That test requires an analysis of whether there was an "accident," and then whether the damage resulting from the accident was subjectively intended or expected. See, generally, *id.,* pp 422-423 (opinion of BOYLE, J.). The present case involves a different aspect of the coverage question, i.e., whether the resulting damage transpired during the policy period. The question when the damage took place—generally phrased as whether coverage was "triggered" during the policy period—has not yet been addressed by the Supreme Court. *Id.,* p 423, n 8.

Where, as in this case, there is a lengthy interval between the act that actually causes damage and the discovery of that damage, difficulties arise in determining when the complaining party was

---

[1] Thus, in this case, the issue is not whether an "accident took place." Compare *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395; 531 NW2d 168 (1995). Nor does this case involve a pollution exclusion with a "sudden and accidental discharge" exception. See *Polkow v Citizens Ins Co of America,* 438 Mich 174; 476 NW2d 382 (1991); *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197; 476 NW2d 392 (1991); *Auto-Owners Ins Co v City of Clare,* 446 Mich 1; 521 NW2d 480 (1994); *Traverse City Light & Power Bd v Home Ins Co,* 209 Mich App 112; 530 NW2d 150 (1995). Rather, the narrow issue here is whether the "accident" resulted in injury or damage during the policy period.

injured. See anno: *Event triggering liability insurance coverage as occurring within period of time covered by liability insurance policy where injury or damage is delayed—modern cases,* 14 ALR5th 695. Four principal theories have evolved regarding when coverage is triggered in such situations.

> If coverage is triggered at the time that personal injury or property damage becomes known to the victim or property owner, the approach is identified as the "manifestation theory." If coverage is triggered when real personal injury or actual property damage first occurs, the approach is called the "injury in fact theory." If coverage is triggered when the first exposure to injury-causing conditions occurs, then the court is said to have chosen the "exposure theory." Finally, if coverage is triggered in a manner such that insurance policies in effect during different time periods all impose a duty to indemnify, then the approach is labelled a "continuous" or "multiple" trigger theory. [*Dow Chemical Co v Associated Indemnity Corp,* 724 F Supp 474, 478 (ED Mich, 1989). Citations omitted.]

In granting summary disposition in favor of defendants in this case, the trial court applied the so-called "manifestation trigger," relying on *Transamerica Ins Co of Michigan v Safeco Ins Co,* 189 Mich App 55; 472 NW2d 5 (1991). In *Transamerica,* the insured installed urea-formaldehyde insulation in businesses and homes. The issue before this Court was whether persons exposed to harmful gasses released by the insulation were damaged, for purposes of triggering coverage, at the time the insulation was installed or when their symptoms manifested themselves. This Court held that coverage is triggered when the personal injury or property damage resulting from exposure manifests itself to the party claiming to have been injured.

Plaintiff points to two federal cases involving environmental contamination decided after *Transamerica* that have declined to apply the manifestation trigger. In *Ray Industries, Inc v Liberty Mutual Ins Co,* 974 F2d 754 (CA 6, 1992), the insured discarded barrels of industrial waste in a landfill through 1979. After the insurer's policy period had expired, it was discovered that the barrels had leaked and the insured was identified by the Environmental Protection Agency as a "potentially responsible party" under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 USC 9601 *et seq.* The *Ray* court reasoned that in CERCLA cases liability arises out of the release of toxic wastes, so that the time of the environmental damage can be pinpointed as the moment hazardous wastes are released. Because *Transamerica* did not involve such a determinable time of damage, the *Ray* court found it to be inapposite. See also *Inland Waters Pollution Control, Inc v National Union Fire Ins Co,* 997 F2d 172, 179-189 (CA 6, 1993) (single discharge resulting in contamination, rather than a gradual release, makes *Transamerica* inapplicable).

Plaintiff also points to *Upjohn Co v New Hampshire Ins Co,* 178 Mich App 706; 444 NW2d 813 (1989), rev'd on other grounds 438 Mich 197; 476 NW2d 392 (1991), an environmental contamination case decided by this Court two years before *Transamerica.* Like *Ray* and *Inland Waters, supra, Upjohn* involved a discharge that occurred at a determinable point in time. In *Upjohn,* the toxic byproducts of antibiotic production leaked from an underground storage tank and entered the soil and groundwater. Daily records established that the leak started on August 16, 1982; use of the tank ceased on September 3, 1982, when the leak was discovered. Upjohn subsequently took steps to de-

contaminate the subsoil and water and then sought coverage for its losses. One of its claims was under excess liability policies that became effective on September 30, 1982. This Court concluded that there was no coverage under those policies because they took effect "over three weeks after Upjohn had discovered the leak." 178 Mich App 722. Another of Upjohn's claims was under a policy that expired on September 30, 1982. This Court held that there was coverage under that policy. The *Upjohn* panel reasoned that because the government could have ordered a toxic waste cleanup, the release of toxins was "property damage" within the meaning of the policy, and the "damage occurred with each spill within the policy period." 178 Mich App 721.

The facts in *Upjohn* make it clearly distinguishable from this case. In *Upjohn,* unlike this case, the contamination was discovered within days of its development; indeed, the insured was able to identify the exact day the toxic leak started. More importantly, unlike the present case, both the fact of the leak *and* its discovery took place within a single policy period. The issue in *Upjohn,* therefore, was not whether the damage occurred when the tank leak actually developed or when it was discovered—the issue before this Court in the present case. We are therefore satisfied that plaintiff's reliance on that case is misplaced.

We conclude that the trial court properly applied *Transamerica* in this case and therefore did not err in ruling that the underlying claimants were damaged, for purposes of coverage, when the presence of 1,4-dioxane in the groundwater was first detected in 1985. Unlike *Inland Waters,* this case does not involve a single, identifiable discharge of pollutants. *Ray* and other cases where

the insured's liability is clearly premised on the act of discharge are also inapposite.

We agree with the analysis employed by the court in *Mraz v Canadian Universal Ins Co, Ltd,* 804 F2d 1325 (CA 4, 1986). In *Mraz,* the insureds buried barrels containing chemical wastes in August 1969. In 1982, contaminated soil and water were discovered at the burial site. Lawsuits for cleanup costs and personal injuries caused by exposure to hazardous substances followed. The insureds sought coverage under a policy in effect from January 1, 1969, to January 1, 1970. As in this case, that policy defined "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." The *Mraz* court ruled, p 1328:

> The general rule is that "[t]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged." *United States Fidelity & Guaranty Co v American Ins Co,* 169 Ind App 1; 345 NE2d 267, 270 (1976). Often, these cases involve a wrongful act that produces no harm for a period of time and then suddenly manifests itself in a burst of damage. *See, e.g., Travelers Ins Co v CJ Gayfer's & Co,* 366 So 2d 1199, 1202 (Fla App, 1979) (faulty roof drainage system finally leaks); *Singsaas v Diederich,* 238 NW2d 878, 880 (Minn, 1976) (collapse of negligently installed manlift); *Peerless Ins Co v Clough,* 105 NH 76; 193 A2d 444, 446 (1963) (fire in negligently built chimney).
>
> There are situations, however, in which the existence or scope of damage remains concealed or uncertain for a period of time even though damage is occurring. The leakage of hazardous wastes as in

this case is a clear example. Determining exactly when damage begins can be difficult, if not impossible. In such cases we believe that the better rule is that the occurrence is deemed to take place when the injuries first manifest themselves. *See Appalachian Ins Co v Liberty Mutual Ins Co,* 676 F2d 56, 62 (CA 3, 1982); *cf. Bartholomew v Appalachian Ins Co,* 655 F2d 27, 28 (CA 1, 1981) (when the defect takes place or is discovered); *Aetna Casualty & Surety Co v PPG Industries, Inc,* 554 F Supp 290, 294 (D Ariz, 1983) (coverage is based upon the time the damage was discovered).

Therefore, we hold that in hazardous waste burial cases such as this one, the occurrence is judged by the time at which the leakage and damage are first discovered. Applying that rule, it is quite clear that the . . . complaint does not allege an occurrence.

Applying the manifestation trigger in this case, the trial court properly determined that the underlying claimants' injuries occurred when the contamination was first detected, in 1985. As such, the injury to the underlying claimants did not take place within the policy period and defendants were not obligated to defend or indemnify plaintiff.[2]

Plaintiff argues that this result effectively transforms defendants' policies from "occurrence" policies into "claims made" policies. See *Marathon Flint Oil Co v American States Ins Co,* 810 F Supp 850 (ED Mich, 1992); *Stine v Continental Casualty Co,* 419 Mich 89; 349 NW2d 127 (1984). We disagree. In "occurrence" policies, coverage attaches when the occurrence takes place, and a claim regarding the occurrence that is filed after the expiration of the policy period will still be covered.

---

[2] Or, otherwise stated, because it was "established that an occurrence has not occurred" during the policy period, no duty to defend was owed. *American Bumper & Mfg Co v Hartford Fire Ins Co,* 207 Mich App 60; 523 NW2d 841 (1994).

*Id.,* p 97. The policies in this case specifically define an occurrence in terms of the *results* or consequences of a wrongful act. Holding that no "occurrence" exists until those results become known does not somehow transform the policy into a claims made policy; the peril insured against is still an occurrence and liability still attaches against the insurer whose policy is in effect when the claimant is injured. See *Mraz, supra.*

Our disposition of plaintiff's appeal makes it unnecessary to address the issue raised in defendants' cross appeal.

Affirmed.

CORRIGAN, J., concurred.

P. J. CLULO, J. I concur in the result only.