ARCO INDUSTRIES CORPORATION v AMERICAN MOTORISTS
INSURANCE COMPANY

Docket Nos. 133908, 136612. Submitted May 21, 1992, at Detroit.
Decided March 1, 1993, at 9:15 A.M. Leave to appeal sought.

Arco Industries Corporation and others brought an action in the
Kalamazoo Circuit Court against American Motorists Insurance
Company and other insurers who had provided liability insur-
ance to Arco, seeking a declaration that the insurers had a
duty to defend and indemnify the plaintiffs in a federal court
action brought by the Department of Natural Resources. In its
action, the department had prevailed, requiring the plaintiffs to
clean up soil and ground water that were contaminated by
chemicals discharged from the plaintiffs' automotive parts man-
ufacturing plant. The circuit court, William G. Schma, J.,
granted summary disposition for the plaintiffs with respect to
the insurers' duty to defend. All insurers, except American
Motorists, thereafter settled with the plaintiffs. Following a
bench trial, American Motorists was ordered to pay a substan-
tial part of the cleanup costs. American Motorists appealed,
disclaiming liability pursuant to an intentional acts exclusion
in its policies.

The Court of Appeals *held:*

Where, as in this case, a liability insurance policy covers only
acts that are "neither expected nor intended from the stand-
point of the insured," the insurer may avoid coverage by
showing either that the insured intended the acts and that the
resulting damage or injury was the natural, foreseeable, ex-
pected, and anticipated consequence of those intentional acts,
or that the insured knew or should have known that there was
a substantial probability that certain consequences would re-
sult from the acts.

The evidence in this case indicates that the chemical dis-
charges resulted from intentional acts attributable to the plain-
tiffs and that they knew or should have known that the soil
and ground water would be contaminated. The circuit court
erred in determining that the plaintiffs' claim was not pre-
cluded by the intentional acts exclusion.

Reversed.

*Honigman Miller Schwartz & Cohn* (by *Jay E. Brant, Philip A. Grashoff, Jr., Mark A. Goddsmith,* and *Daniel G. Helton*), and *Butler Durham & Svikis* (by *Sidney D. Durham* and *Andis Svikis*) for Arco Industries Corporation and Frederick C. Matthaei, Jr.

*Miller, Canfield, Paddock & Stone* (by *Kevin J. Moody, Michael B. Ortega,* and *Clifford T. Flood*), and *Drinker Biddle & Reath* (by *Thomas S. Schaufelberger* and *Steven A. Bennett*), for American Motorists Insurance Company.

Amicis Curiae:

*John D. Noonan,* (*Andrew P. Buchsbaum,* of Counsel), for Environmental Law Society.

*Hill Lewis* (by *Richard C. Sanders*) (*Anderson Kill Olick & Oshinsky, P.C.,* by *Eugene R. Anderson,* and *Martha Churchill,* of Counsel), for Mid-America Legal Foundation. Detroit, New York, NY, Chicago, IL

*Hooper, Hathaway, Price, Beauche & Wallace* (by *William Stapleton*), (*Wiley, Rein & Fielding* by *Thomas W. Brunner, Marilyn E. Kerst, James M. Johnstone,* and *Robert M. Gordon,* of Counsel), for Insurance Environmental Litigation Association.

Before: MICHAEL J. KELLY, P.J., and MacKENZIE and BRENNAN, JJ.

MICHAEL J. KELLY, P.J. This declaratory judgment action arises from the refusal of defendant American Motorists Insurance Company to indemnify plaintiffs for costs incurred in defending an action brought by the Department of Natural Resources for remediation of a chemical contamina-

tion site at Arco Industries Corporation's Schoolcraft plant. Arco; Fredrick C. Matthaei, Jr., chairman of Arco's board of directors; and Robert P. Ferguson, president of the corporation, brought this action seeking to compel defendants to indemnify them for the costs associated with remedying the chemical contamination at Arco's plant. On October 31, 1988, the trial court granted plaintiffs' motion for summary disposition with respect to the issue of defendants' duty to defend. Following a bench trial, the trial court entered an order requiring American Motorists to indemnify plaintiffs for 68.63 percent of the remediation costs. American Motorists (hereinafter defendant) appeals as of right. Although defendant raises several issues, we find one issue dispositive, and, on that basis, reverse.

The pertinent facts are undisputed. Arco has operated its automotive parts manufacturing plant in Schoolcraft since 1967. The plant was constructed in 1953, and operated by Arco's predecessor, Automotive Rubber Company. The manufacturing process at the plant required that parts be dipped into liquid plastisol or vinyl. Also, some of the parts were treated with volatile organic compounds (vocs), such as trichlor and perchlor. vocs were also used to remove plastisol from the plant floors after it would drip from parts or spill onto the floor because of machine malfunctions. The floor of Arco's plant contained a trench drainage system that emptied into an unlined "seepage lagoon" in back of the plant. As part of the cleansing and manufacturing process, wastes were flushed through the drainage system and into the lagoon. During the years in question, large quantities of vocs were flushed through the drainage system and found their way into the lagoon.

On November 19, 1985, the DNR notified Arco

that tests had shown ground water contamination by vocs that records indicated originated from Arco's plant. Arco was ordered to investigate the extent of the contamination and implement remedial measures. Arco retained environmental consultants who found vocs present in the soil surrounding the facility, including the seepage lagoon.

On October 15, 1987, the State of Michigan filed a complaint against plaintiffs in federal district court, seeking to compel them to remedy the contamination. Ultimately, the State of Michigan and plaintiffs entered into a consent decree. The decree required plaintiffs to pay the state $450,000 in response costs and attorney fees. Plaintiffs were also required to implement a ground water treatment system, a soil remediation program, a ground water purge system, and a ground water monitoring program.

During the years Arco operated the plant, it was covered by various insurance policies. Defendant American Motorists Insurance Company issued Arco seven annual policies covering the years 1968 through 1974. However, defendant insurance companies refused to defend or indemnify plaintiffs, claiming that the policies did not cover this type of incident. Plaintiffs commenced this action on February 4, 1987, seeking to compel defendants to defend and indemnify them. Before trial, all defendants except American Motorists settled with plaintiffs.

On September 28, 1990, the trial court issued a final order compelling defendant American Motorists to pay 68.63 percent of plaintiffs' remediation costs, up to defendant's policy limits.

Defendant argues that the trial court clearly erred in finding that plaintiffs had not intended or expected vocs to disperse into the lagoon and eventually into the ground water. We agree.

The insurance policies issued to Arco by defendant all contained the following clause:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence.

The policies defined "an occurrence" as

> an accident, including continuous or repeated exposure to conditions, which result during the policy period in . . . property damage neither expected nor intended from the standpoint of the insured.

Injury or damage is expected when it is the natural, foreseeable, expected, and anticipated result of an intentional act. *Allstate Ins Co v Freeman,* 432 Mich 656, 687-688, 700; 443 NW2d 734 (1989), modified on other grounds sub nom *Metropolitan Property & Liability Ins Co v DiCicco,* 433 Mich 1202 (1989); *State Farm Fire & Casualty Co v Fisher,* 192 Mich App 371, 375; 481 NW2d 743 (1991). Whether the insured intended its actions is determined under a subjective standard. *Freeman, supra* at 676; *Alber v Farm Bureau Mutual Ins Co,* 187 Mich App 557, 560; 468 NW2d 282 (1991). When the policy covers only acts that are "neither expected [n]or intended from the standpoint of the insured," the insurer may avoid coverage by showing either (1) that the insured intended the acts and that the resulting damage or injury was the natural, foreseeable, expected, and anticipated consequence of those intentional acts, or (2) that the insured knew or should have known that there was a substantial probability that certain conse-

quences would result from the acts. *Freeman, supra* at 675-676.

After reviewing the extensive evidence presented at trial in this matter, we hold that Arco intended to flush vocs through the drainage system and knew or should have known that there was a substantial probability that certain detrimental consequences would result from its actions.

Defendant presented the testimony of numerous former Arco employees who testified that they had intentionally dumped or squeegeed vocs into the drains that led to the seepage lagoon. Several of these former employees also testified that they had observed other Arco employees doing the same. One of plaintiffs' witnesses testified that he observed an Arco employee deliberately dump 150 to 165 gallons of vocs directly onto the bare ground behind the plant. This witness also testified that he observed an Arco employee deliberately dumping vocs into the drains. Former Arco employees also testified that vocs were used to mop the plant floors from at least 1964 to 1979. The mopping was often performed on and around the drains that led directly to the unlined lagoons. Given the frequency and volume of mopping required to clean the plant floors, some of the vocs would invariably go into the drains and be washed into the lagoons. Furthermore, plaintiffs' expert testified that during the manufacturing process, vocs were discharged into the lagoon during defendant's coverage period. Additionally, Arco's plant chemist testified that he knew at the time he began employment with Arco in 1972 that vocs should not be discharged into the unlined lagoon because they would degrade the environment.

Clearly, there were intentional discharges of vocs by Arco employees, which eventually migrated into the ground water and were either the

foreseeable result of intentional acts or were part of a practice that Arco knew or should have known would result in a substantial probability that vocs would contaminate the soil and ground water. Accordingly, the trial court erred in finding that plaintiffs had not intended or expected vocs to disperse into the lagoons and eventually into the ground water. Defendant is not required to indemnify plaintiffs. *Freeman, supra* at 675-676.

Reversed.