TRAVERSE CITY LIGHT AND POWER BOARD v THE HOME
INSURANCE COMPANY

Docket No. 151170. Submitted February 17, 1994, at Grand Rapids.
Decided March 6, 1995, at 9:05 A.M. Leave to appeal sought.

Traverse City Light and Power Board brought an action in the
Grand Traverse Circuit Court against The Home Insurance
Company, seeking a declaration that the defendant, as the
plaintiff's liability insurer, must provide legal representation
for the plaintiff in its challenge of an order from the Depart-
ment of Natural Resources. The order directed the plaintiff to
cease and desist from dumping fly ash, a waste material gener-
ated by the plaintiff's power plant, at an abandoned gravel pit
so that contamination of the ground water can be avoided. The
order also directed the plaintiff to remediate the contamination.
For the period when the plaintiff disposed of the fly ash at the
gravel pit, the defendant's policies generally excluded coverage
for bodily injury or property damage arising out of the disposal
of waste materials into land, the atmosphere or any water-
course or body of water, but provided an exception to the
exclusion if the dispersal was neither expected nor intended by
the insured or if the dispersal was sudden and accidental. The
court, Richard J. Liedel, J., granted summary disposition for
the plaintiff, ruling that there was a factual dispute concerning
the cause of the alleged contamination and that until it is
established that the plaintiff was the source of the contamina-
tion, a determination cannot be made with respect to whether
coverage is excluded under the defendant's policies. The court
subsequently denied the defendant's motion for reconsideration.
The plaintiff appealed.

The Court of Appeals *held:*

1. There need not be pollution in order for the exclusions to
apply. The mere discharge, dispersal, release, or escape of
waste material and the other items enumerated in the policies
precludes coverage, regardless of the materials' potential to

REFERENCES

Am Jur 2d, Insurance § 711.
Construction and application of pollution exclusion clause in liabil-
ity insurance policy. 39 ALR4th 1047.

cause pollution. Coverage may be restored if the discharge was unexpected or unintended, or if it was sudden and accidental.

2. A subjective standard is used in determining whether a discharge was neither expected nor intended by the insured. Here, it cannot be said that the plaintiff did not expect or intend the discharge of fly ash into the pit because it had dumped the fly ash into the pit at least twice a day for twelve years.

3. An objective standard applies when determining whether a discharge was sudden and accidental. In this case, it cannot be said that the discharge was sudden because it was not unexpected, and it cannot be said that the discharge was accidental because it did not occur unexpectedly and unintentionally, or by chance.

Reversed and remanded for entry of judgment for the defendant.

M.J. MATUZAK, J., dissenting, stated that, because it is unclear whether the plaintiff is the cause or source of the alleged contamination, it cannot be determined whether the exclusions apply and whether the exceptions for unexpected or unintended or sudden and accidental discharges apply. The defendant's duty to provide legal representation was triggered by the DNR's allegation of contamination, and the defendant owes that duty until it can establish that the exclusions apply. The trial court correctly denied the defendant's motion for reconsideration because the defendant merely offered the same arguments it made in its motion for summary disposition.

INSURANCE — LIABILITY POLICIES — POLLUTION EXCLUSIONS.

A liability policy that excludes coverage for bodily injury or property damage arising out of the discharge, dispersal, release, or escape of waste materials into or upon land, the atmosphere, or any watercourse or body of water, but provides exceptions to the exclusion for discharge, dispersal, release, or escape that is not expected or intended by the insured or that is sudden and accidental provides no coverage for alleged contamination caused by an intended or expected discharge, dispersal, release, or escape of waste materials, regardless of whether the contamination was caused by such discharge, dispersal, release, or escape; it is the discharge, not the contamination, that must be unexpected or unintended or sudden and accidental in order for the exceptions to apply.

*Rossi, Olson & Levine, P.C.* (by *Barry L. Levine* and *James M. Olson*), for the plaintiff.

*Roberts, Betz & Bloss, P.C.* (by *David Bloss* and
*Scott R. Newfer*), for the defendant.

Before: Taylor, P.J., and MacKenzie and M. J.
Matuzak,* JJ.

Taylor, P.J. Defendant appeals as of right the
trial court order granting summary disposition in
favor of plaintiff. We reverse.

From 1975 to 1987, plaintiff disposed of its fly
ash, a waste material produced by its electrical
generation plant, at the abandoned Samuelson
gravel pit. In the early 1980s, plaintiff began tak-
ing steps to obtain a type III license to dispose of
inert materials. As a requirement of the licensing
application, plaintiff conducted tests on the fly ash
and ground water at the pit. In 1987, the Michigan
Department of Natural Resources denied plaintiff's
type III license application, concluding that the fly
ash, when combined with precipitation, could
leach into the underground aquifer and cause
contamination. The DNR advised plaintiff that con-
tinued use of the site for fly ash disposal would
violate the Solid Waste Management Act, MCL
299.401 *et seq.*; MSA 13.29(1) *et seq.* In 1988, the
DNR issued a cease and desist order requiring
plaintiff to discontinue using the gravel pit to
dump fly ash and to remediate ground water con-
tamination.

From 1975 to 1984, defendant issued three com-
prehensive general insurance policies to plaintiff;
each was an "occurrence policy" covering consecu-
tive three-year periods. The two policies covering
plaintiff from 1975 to 1981 contained the following
exclusion:

This policy does not apply:

* Circuit judge, sitting on the Court of Appeals by assignment.

\* \* \*

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is neither expected nor intended by the insured.

Simply stated, the policy covers damage arising from the discharge of certain materials if the insured did not expect or intend the discharge.

The 1981 through 1984 policy had a slightly different exclusion that provided:

This policy does not apply:

\* \* \*

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This is similar to the earlier policy language and says, again simplified, that the damage is covered if the discharge was sudden and accidental.

Plaintiff challenged the DNR's cease and desist order and contacted defendant to request coverage of the cost of defending against the order. Defendant denied coverage and plaintiff initiated the instant suit. Eventually, both parties moved for summary disposition. Defendant argued that it had no duty to defend or indemnify plaintiff because plaintiff's claim fell within the previously

cited exclusions of the policies (commonly referred
to as the pollution exclusion). In essence, plaintiff
argued that defendant had a duty to defend plain-
tiff in its challenge of the DNR order until the
source of the alleged contamination was discov-
ered. At that point, depending on what had been
determined, the exclusion under the policy might
preclude coverage.

In granting plaintiff's motion for summary dis-
position, the trial court determined that our Su-
preme Court's decision in *Polkow v Citizens Ins
Co,* 438 Mich 174; 476 NW2d 382 (1991), was
dispositive. The trial court concluded that an event
triggering coverage under the policy occurred
when the DNR claimed that plaintiff's actions
caused damage. The court reasoned that because
an insurer has a duty to defend a claim if coverage
is even arguable, *id.* at 180, the insurer should
have defended until it was clear that plaintiff's
actions did not cause the damage. We disagree.

*Polkow* is distinguishable from the instant case
on its facts.[1] In *Polkow,* there was a factual dispute
regarding whether the initial discharge was the
result of oil leaks in the underground storage
tanks or was the result of spillage during the
transfer process from the tanker trucks to the
underground tanks. *Id.* at 178-179. Accordingly,
when the discharge occurred, it was impossible to
say if the discharge was sudden and accidental.
The Supreme Court remanded the case for factual
determinations regarding "whether the discharge
falls within the pollution-exclusion clause or

---

[1] This case is also distinguishable from *American Bumper & Mfg Co
v Hartford Fire Ins Co,* 207 Mich App 60; 523 NW2d 841 (1994). As
far as the *American Bumper* opinion reveals, the policies at issue in
that case did not contain either "intended or expected" or "sudden
and accidental" exclusion language similar to the language at issue
here. The Court in *American Bumper* simply addressed the question
whether there were sufficient indicia of an "occurrence" to give rise
to a duty to defend. *Id.* at 65.

whether the unknown discharge falls within the sudden and accidental exception to the exclusion clause." *Id.* at 180-181.

In relying on *Polkow,* the trial court inappropriately focused on whether plaintiff's fly ash caused the ground water contamination, rather than on plaintiff's initial discharge of the material into the environment. According to the trial court, because a factual dispute existed regarding the cause of the ground water contamination, it could not determine if the "pollution exclusion" applied until it examined "whether the discharge of pollutants was sudden and accidental." The trial court's error is understandable in light of the fact that this type of exclusion in insurance policies is commonly referred to as a "*pollution* exclusion." This description of the exclusion clause is misleading. There need not be pollution for the exclusion to be triggered. The mere discharge, dispersal, release, or escape of the enumerated materials precludes coverage under the policy, regardless of the materials' potential to cause pollution. Coverage may be restored if the initial discharge was unexpected or unintended, or sudden and accidental.

In *Auto-Owners Ins Co v City of Clare,* 446 Mich 1; 521 NW2d 480 (1994), our Supreme Court specifically declined to address the question whether the "initial discharge rule" announced in *Protective Nat'l Ins Co of Omaha v City of Woodhaven,* 438 Mich 154; 476 NW2d 374 (1991), applied. The Court reasoned that because the result would be the same under either analysis, the question regarding initial discharge need not be reached. *City of Clare, supra* at 15, n 12. We hold that the initial discharge rule articulated in *Woodhaven* is applicable to the instant case. Accordingly, our analysis focuses on the initial discharge or placement of the materials into the gravel pit, not on their alleged

subsequent migration into the soil. If the insured expected or intended the initial discharge (1975-81 policies) or if the initial discharge was not sudden and accidental (1981-84 policy), then there is no coverage. Unlike *Polkow,* in this case it is undisputed that the initial discharge was plaintiff's dumping fly ash at the gravel pit. It is this event, and whether it was "expected or intended" or, later, "sudden and accidental," that must determine the applicability of the exclusions under the policies.

The exclusion clause in the policies covering plaintiff from 1975 to 1981 provides for coverage if the initial discharge is "neither expected nor intended by the insured." Accordingly, the insured's actions must be analyzed under a subjective standard. *Arco Industries Corp v American Motorists Ins Co,* 198 Mich App 347, 351; 497 NW2d 190 (1993). Admittedly, determining an individual's subjective intentions or expectations is difficult. However, the facts of the instant case present circumstances in which the insured's subjective intentions can be easily inferred.

> "Intent is a secret of the defendant's mind," which he can disclose by his declarations or by his actions and "his actions sometimes speak louder than words." [*Allstate Ins Co v Freeman,* 432 Mich 656, 679; 443 NW2d 734 (1989). Citations omitted.]

For twelve years, plaintiff arranged to discharge fly ash at the gravel pit at least two times a day. To now claim that plaintiff did not expect or intend this discharge "flies in the face of all reason, common sense and experience." *Id.* at 720 (BOYLE, J.). There being no factual dispute that plaintiff expected and intended the initial discharge of the fly ash, as a matter of law, the

policies effective from 1975 to 1981 preclude coverage. Accordingly, the trial court should have granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10).

Unlike the policies that provided coverage from 1975 to 1981, the policy effective from 1981 through 1984 contained an exclusion that precluded coverage unless the discharge was "sudden and accidental." The actual language of this exclusion clause "unambiguously links the terms 'sudden and accidental' with the release as opposed to the knowledge, intent, or expectation of the insured." *Matakas v Citizens Mutual Ins Co,* 202 Mich App 642, 653; 509 NW2d 899 (1993). Accordingly, under this policy the insured's actions must be analyzed under an objective rather than subjective standard. See *State Farm Fire & Casualty Co v Fisher,* 192 Mich App 371, 377; 481 NW2d 743 (1991); *Secura Ins Co v Blotsky,* 182 Mich App 637, 642; 452 NW2d 899 (1990).

In interpreting an identical "sudden and accidental" policy exclusion, our Supreme Court stated, "[f]or something to be sudden, it must be *both* immediate *and* unexpected." *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197, 210, n 9; 476 NW2d 392 (1991) (emphasis in original). In this case, plaintiff's disposal of the fly ash was both intended and expected. Therefore, it cannot possibly be viewed as sudden. For the same reason, the discharge cannot be viewed as accidental because "[a]ccidental means occurring unexpectedly and unintentionally; by chance." *Id.* at 207-208. Thus, viewed objectively, plaintiff's actions fall within the pollution exclusions contained in these insurance policies and the trial court erred in denying defendant's motion for summary disposition pursuant to MCR 2.116(C)(10).

Reversed and remanded for entry of judgment in favor of defendant.

MACKENZIE, J., concurred.

M. J. MATUZAK, J. *(dissenting)*. I respectfully dissent. The majority's determination that the deposit of fly ash was an intentional and deliberate act and a critical event triggering the exclusion misses the point regarding whether defendant had a duty to defend pursuant to the policy's terms. The majority ignores the practical consideration that plaintiff's action has not been shown to be the source or cause of contamination. In my opinion, absent culpability on the part of plaintiff, defendant would be required to offer representation.

Both parties rely primarily upon one or more of a trilogy of cases decided by our Supreme Court construing pollution exclusions in comprehensive general liability policies. *Protective Nat'l Ins Co of Omaha v City of Woodhaven,* 438 Mich 154; 476 NW2d 374 (1991); *Polkow v Citizens Ins Co,* 438 Mich 174; 476 NW2d 382 (1991); *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197; 476 NW2d 392 (1992).

In *Polkow, supra,* the plaintiff owned an oil reclamation business. In the course of his business, the plaintiff picked up used oil from various sources and deposited the oil into underground tanks, where the oil separated from the water. *Id.* at 182. Once the oil separated, the plaintiff moved the oil to another tank. The plaintiff admitted in depositions that in addition to routine spillage during the transmission of the oil into the various tanks, at least one tank overflow had occurred. *Id.* at 182-183.

Ultimately, the Department of Natural Resources contacted the plaintiff and informed him

that soil samples taken from his property indicated that the plaintiff was responsible for local ground water contamination. *Id.* at 183. The DNR ordered the plaintiff to test his property, remove the source of the contamination, and submit a remediation plan. *Id.* Shortly thereafter, the plaintiff contacted the defendant, with whom the plaintiff had a comprehensive general liability contract with a pollution exclusion identical to the 1981-1984 policy at issue in this case, and requested that the defendant defend the plaintiff in his action against the DNR. The defendant, citing the pollution exclusion, denied coverage. *Id.*

The plaintiff's engineer subsequently determined that, although there was ground water contamination, the plaintiff was not the source of the contamination. *Id.* at 183-184. When the plaintiff repeated his request that the defendant pay for the cost of his defense, the defendant again refused. *Id.* at 184. The plaintiff then brought a declaratory action against the defendant, requesting that the defendant be ordered to defend the plaintiff and indemnify against future loss. The circuit court granted the plaintiff's motion for summary disposition, finding that the defendant owed the plaintiff both duties. *Id.* This Court affirmed. *Id.*

The Supreme Court analysis noted the existence of a factual question regarding whether the plaintiff's operations were the cause of the contamination. *Id.* at 178-179. The Court observed that "[i]t was the 'duty of [the insurer] to undertake the defense until it could confine the claim to a recovery that the policy did not cover.'" *Id.* at 179 (citations omitted). Furthermore, the Court stated that the insurer's duty to provide a defense extends to allegations that even arguably come within the policy coverage. *Id.* at 180 (citations omitted). Next, the Court stated that it could not

determine whether the pollution exclusion applied, or whether the plaintiff was responsible, or, if the plaintiff was responsible, how the contamination occurred. *Id.*

Thus, the Court determined that the lower court erred in granting the plaintiff's motion for summary disposition because it was unclear whether the defendant's policy provided coverage for the plaintiff's claim. *Id.* at 180-181. However, the Court also determined that, until the factual dispute could be resolved, the defendant owed a duty to defend the plaintiff because the plaintiff's claim "arguably" came within the terms of the defendant's policy. *Id.* at 180. Accordingly, the Court held that the defendant owed the plaintiff a duty to defend until it could be determined that the defendant did not owe this duty. *Id.* The Court reversed the lower court's grant of summary disposition and remanded the case to resolve the pertinent factual questions. *Id.* at 181.

The facts of the instant case are similar to the facts in *Polkow.* Most importantly, in this case, the lower court record demonstrates that no determination has been made regarding whether plaintiff's fly ash is the cause of the ground water contamination. As Catherine Cline, the DNR's ground water geologist testified, the tests to date have not determined conclusively whether plaintiff's fly ash was the source of the ground water contamination. Accordingly, Cline stated that, even if plaintiff was responsible, she could not determine whether the process of contamination was fast or slow. Also, plaintiff's geologist determined that plaintiff was not the cause of the ground water contamination.

The defendant must defend the plaintiff when the plaintiff's claim even arguably comes within defendant's policy. If a doubt exists regarding

whether a claim falls within a policy, that doubt must be resolved in the insured's favor. *Woodhaven, supra* at 159. In this case, plaintiff's claim arguably comes within the policy because, in addition to the lower court's finding that there was an "occurrence" under the policy, it is possible that plaintiff's claim will fall within the "sudden and accidental" exception to the pollution exclusion. This follows from the fact that it cannot be determined whether, or how, plaintiff is responsible for the contamination.

The only way defendant can withhold coverage is if the pollution exclusion in its policies applies. Because it is unclear whether plaintiff is responsible for the contamination in the instant case, it cannot be determined whether that exclusion can be invoked, and if it can, whether the exception to that exclusion applies. Accordingly, defendant's duty to defend has been triggered, and it must defend against the DNR's allegations until it can prove its pollution exclusion applies. *Polkow, supra* at 180-181.

The error in defendant's argument that *Woodhaven* controls this case is that the argument assumes plaintiff's fly ash is the source of the contamination. *Woodhaven* is distinguishable from this case on its facts because, in *Woodhaven,* the fact that the insured was responsible for some harm was not in question. Here, however, that issue has not been resolved. In other words, before it can be determined that the pollution exclusion does apply, it must be determined that the insured has caused the pollution.

This Court's recent decision in *American Bumper & Mfg Co v Hartford Fire Ins Co,* 207 Mich App 60; 523 NW2d 841 (1994), should guide the determination in this case. *American Bumper*

deals with a difficulty similar to that presented in
the instant litigation:

> What makes this case difficult is the fact that
> ultimately there was no contamination, or at least
> not in sufficient amounts to warrant EPA action, by
> which we could examine the facts and determine
> the existence of an event that would trigger cover-
> age under the policy. [*Id.* at 65-66.]

The *American Bumper* Court went on to find:

> However, we are not called upon to determine
> whether there is coverage to clean up a pollution
> site, but whether there was a duty to defend
> against the EPA investigation into *possible* contam-
> ination, where that investigation resulted in the
> conclusion that *there was no contamination.* . . .
> An insurer's duty to defend differs from the duty
> to provide coverage. It extends to even nonmerito-
> rious claims where those claims allege theories of
> recovery which fall within the policy. If there is
> any doubt regarding whether an allegation comes
> within the scope of the policy, that doubt must be
> resolved in the insured's favor. Thus, the insurer
> owes the duty to defend until such time as the
> insurer has confined the claims against the in-
> sured to those theories the policy would not cover.
> In the context of pollution cases, this means that
> the insurer has a duty to defend until there is at
> least sufficient factual development to determine
> what caused the pollution so that a determination
> can be made regarding whether the discharge was
> sudden and accidental. *Until that point, the allega-
> tion must be regarded as coming arguably within
> the liability policy, thus resulting in a duty to
> defend.* [*Id.* at 66-67. Emphasis added; citations
> omitted.]

In providing its own defense, plaintiff succeeded
in setting aside the initial remediation order as

being in excess of the DNR's statutory authority.
Following that, plaintiff succeeded in showing that
contamination at the site, if any, was not attribut-
able to plaintiff's conduct. Further, under the
terms of the DNR consent order, the DNR deter-
mined no remediation was required.

As I have noted above, under the plain terms of
the policy, the insurer has a duty to defend its
insured against groundless claims. As the *Ameri-
can Bumper* Court stated:

> The difficulty in applying this analysis to the
> case at bar is that no pollution was ever found, at
> least not in sufficient quantities to merit a full-
> scale cleanup. That is, without such a discharge,
> the facts will never be developed to the point
> where it can be determined that the discharge was
> or was not sudden and accidental, thus triggering
> policy coverage. . . .
> Thus, we find ourselves grappling with the horns
> of a dilemma. Do we consider the discharge that
> never occurred to have been sudden and accidental
> had it occurred and therefore triggering coverage
> and a duty to defend? Or do we consider it as
> something other than sudden and accidental and,
> therefore, coming within the provisions of the
> pollution exclusion, not meeting the definition of
> an occurrence under the policy, and therefore not
> triggering coverage or duty to defend? [*Id.* at 67-
> 68.]

After undertaking a brief analysis of the deci-
sion in *Polkow,* as it pertains to the insurer's duty
to defend, this Court concluded:

> With these principles in mind, we conclude that,
> under the circumstances of this case, an "occur-
> rence" sufficient to trigger the duty to defend
> under the policies may have happened. More spe-
> cifically, a duty to defend was owed until such
> time as it could be established that no sudden and

accidental discharge of a pollutant had occurred.
. . .

Thus, the question is not so much whether an "occurrence" has occurred, but whether it has been established that an occurrence has not occurred. *Until it is established that an occurrence has not occurred, a duty to defend is owed.* Because it was not clearly established that an occurrence did not occur, the duty to defend existed until either the EPA investigation was complete and there was no need for further defense or until the carriers could affirmatively establish that no occurrence had occurred. [*American Bumper, supra* at 69-70. Emphasis added.]

The analysis applied in *American Bumper* is the analysis that should have been applied to defendant in the instant case. The facts of the *American Bumper* case and the instant case are virtually indistinguishable. Pursuant to MCR 7.215(C)(2), a "published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." Clearly, *American Bumper* is controlling in the instant appeal and has precedential effect.

Defendant also argues that the trial court erred in failing to reconsider its initial decision based upon the long-term intentional dispersal of waste materials pursuant to *Woodhaven, supra.* Defendant asserts that the trial court erred in denying its motion for reconsideration because it focused on the wrong case law, and because defendant offered new case law interpreting the cases upon which it previously relied.

In response, plaintiff argues that the lower court correctly denied defendant's motion for reconsideration because defendant improperly made the same arguments in that motion as it had in its motion for summary disposition. MCR 2.119(F)(3) states:

Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

In *Cason v Auto Owners Ins Co,* 181 Mich App 600, 605; 450 NW2d 6 (1989), this Court affirmed the rule that "a motion which merely presents the same issue as ruled on by the court, either expressly or by reasonable implication, will not be granted." *Id.*

Defendant relies on *Fetz Engineering Co v Ecco Systems, Inc,* 188 Mich App 362, 374; 471 NW2d 85 (1991), vacated on other grounds 439 Mich 977 (1992), in which this Court determined "not only was the trial court permitted to grant reconsideration on the basis of newly published precedent, it was obligated to do so."

In this case, the new case law upon which defendant relied had been published before the lower court's order. In fact, defendant only cites one case decided after 1991, and that case was published in January 1992. I believe that defendant's motion for reconsideration was merely an attempt to bolster its earlier argument that *Woodhaven* controls the determination. The lower court, however, correctly determined that the instant action was controlled by *Polkow.*

Accordingly, I believe that the lower court did not abuse its discretion by denying defendant's motion to reconsider under MCR 2.119(F)(3).

Finally, defendant argues that the trial court erred in denying its motion for summary disposition and in granting plaintiff's motion because

plaintiff failed to show that its claim fell within the terms of defendant's policy, and even if it did, defendant demonstrated that the pollution exclusion applies.

In response, plaintiff argues that the trial court correctly denied defendant's motion and granted its motion because plaintiff demonstrated that its claim fell within defendant's policy, and defendant did not show that the pollution exclusion applied.

The controlling issue is whether defendant has a duty to defend plaintiff. The court described an insurer's duty to defend in the following manner:

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. [*Woodhaven, supra* at 159, quoting *Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 141-142; 301 NW2d 832 (1980). Emphasis in original.]

In this case, plaintiff's claim is arguably within defendant's policy coverage because it cannot be determined whether the sudden and accidental exception to the pollution exclusion in defendant's policy applies. As previously mentioned, it is this same factual dispute that precludes defendant from conclusively establishing that the pollution exclusion applies. Thus, plaintiff has established that its claim arguably falls within defendant's policy, and defendant has not proven that its policy excludes plaintiff's claim.

The trial court correctly denied defendant's motion for summary disposition and granted plaintiff's motion for summary disposition because an insurer has a duty to defend its insured even when a claim is only arguably within the insurer's policy. Because it could not be determined how or whether plaintiff was responsible for the ground water contamination, plaintiff's claim arguably fell within defendant's policy, thus triggering defendant's duty to defend. Furthermore, I believe the trial court did not err in denying defendant's motion for reconsideration because defendant merely offered the same argument in its motion to reconsider as it had in its motion for summary disposition. Accordingly, for the reasons stated herein, I would affirm the decision of the trial court.