**CITY OF ALBION, a municipal corporation, Plaintiff,**

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Imperial Casualty & Indemnity Company of Omaha, National Union Fire Insurance Company of Pittsburgh, PA, and Protective National Insurance Company of Omaha, Defendants.**

**No. 1:98–XC–676.**

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 15, 1999.

Mich. 627, 628, 473 N.W.2d 268, 273 (1991)).

See also 35 F.Supp.2d 542.

Mark S. Allard, Mark M. Davis, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Albion, City of, a Michigan municipal corporation, plaintiff.

David J. Bloss, Roberts, Betz & Bloss, PC, Grand Rapids, MI, Deborah Molitz, Orlans Associates P.C., Troy, MI, for Guaranty National Insurance Company, defendant.

Michael J. Watza, Richard M. Mitchell, Kitch, Drutchas, Wagner & Kenney, PC, Detroit, MI, for Imperial Casualty & Indemnity Company of Omaha, defendant.

Charles N. Dewey, Jr., Dilley & Dewey, Grand Rapids, MI, for National Union Fire Insurance Company of Pittsburgh, P.A., defendant.

Thomas L. Auth, Jr., Sullivan, Ward, Bone, Tyler & Asher, P.C., Southfield, MI, for Protective National Insurance Company of Omaha, defendant.

Lawrence P. Mulligan, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, for Twin City Fire Insurance Company, defendant.

## OPINION

QUIST, District Judge.

Plaintiff, the City of Albion ("City"), filed a complaint on July 10, 1998, in the Calhoun County Circuit Court against Defendants Protective National Insurance Company of Omaha ("Protective"), Guaranty National Insurance Company ("Guaranty"), and Imperial Casualty & Indemnity Company of Omaha ("Imperial"). In its

complaint, the City sought a declaration that Defendants were liable under certain comprehensive general liability insurance policies to indemnify the City and pay its defense costs in connection with an environmental pollution suit pending in this district, captioned *United States v. City of Albion, et al.*, case no. 1:97–CV–1037.[1] On September 22, 1998, Defendants removed the case to this Court on the basis of diversity of citizenship.[2] Now before the Court is the City's motion for partial summary judgment. The Court has read the briefs and heard oral argument.

### Facts and Procedural Background

This case arises out of the United States Environmental Protection Agency ("EPA") "Superfund" proceedings regarding the Albion–Sheridan Township Landfill (the "Landfill"). Between 1966 and 1981, the City and Gordon Stevic, the owner of the property on which the Landfill was located, operated the Landfill as a solid waste disposal facility pursuant to a license issued by the State of Michigan on June 13, 1966. During its operation, the State of Michigan and Calhoun County subjected the Landfill to several inspections. In 1980, the Calhoun County Health Department issued a cease and desist order for the Landfill due to improper handling of sludges which were placed in the Landfill throughout its operation. In the same year, the Michigan Department of Natural Resources analyzed samples of sludges being disposed of in the Landfill and determined that the materials contained heavy metals, including chromium, zinc, nickel, and lead. The Landfill was closed in September 1981.

In 1986, the EPA began investigating the Landfill. In 1989, the EPA placed the Landfill on the Superfund National Priorities List, as the investigations conducted by the EPA revealed that significant amounts of toxic chemical wastes and metallic sludge had been deposited at the Landfill. On or about June 3, 1991, the EPA identified the City and several other potentially responsible parties as being responsible for contamination at the Landfill. The City failed to negotiate an agreement for cleanup of the Landfill, and the EPA filed a complaint against the City under sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 to 9675. In its complaint, the EPA alleged that metal plating sludges, heavy metals, liquid industrial wastes, waste sludges, paint wastes and thinners, and oil and grease were place in the Landfill and that the City was liable because it operated and maintained control over the Landfill during the time when hazardous substances were placed in the Landfill. On July 2, 1999, the City reached a comprehensive settlement with the EPA and a consent decree memorializing the agreement was entered.

Guaranty, Protective, and Imperial issued comprehensive general liability policies to the City between 1979 and 1985. Guaranty's policies ran from September 1, 1979, to September 1, 1981.[3] Protective's policies ran from September 1, 1981, to October 1, 1984. Imperial's policy was in effect from October 1, 1984, to October 1, 1985.

All the policies at issue in this case contained standard pollution exclusion clauses which excluded coverage based upon releases of pollutants into the environment but contained an exception for

---

1. The City also sued two excess carriers, National Union Fire Insurance Company of Pittsburgh and Twin City Fire Insurance Company, but has agreed to dismiss those defendants without prejudice.

2. The Court denied the City's motion for remand on November 23, 1998. *See City of Albion v. Guaranty Nat'l Ins. Co.*, 35 F.Supp.2d 542 (W.D.Mich.1998).

3. The City did not attach a copy of the 1979–80 policy to its motion and Guaranty states that it has no record that it issued a policy to the City for that period. However, the Court finds that while the City must ultimately present evidence that Guaranty issued coverage during that period, that resolution of that issue is not critical to the issues before the Court in the instant motion.

releases or escapes of pollutants that were "sudden and accidental." (*See* 9/1/80 – 9/1/81 Guaranty Policy, Pl.'s Br. Supp. Ex. 2 at 5; 9/1/81 – 9/1/82 Protective policy at 4, Pl.'s Br. Supp. Ex. 3 at 6; 10/1/84 – 10/1/85 Imperial Policy at 2, Pl.'s Br. Supp. Ex. 4 at 7.)

The City initially tendered the CERCLA complaint to Defendants for defense and indemnification. However, Defendants denied coverage on the basis of the pollution exclusion clauses contained in the policies, as well as other grounds. Thus, after concluding the settlement with the United States, the City commenced this action seeking defense costs and indemnity for amounts paid in the CERCLA action.

During the status conference which the Court held on May 26, 1999, the City's counsel suggested that the scope of discovery and the issues in the case might be significantly narrowed if the Court determined whether the City's theory—that the relevant discharge or release for purposes of the "sudden and accidental" exclusion is the migration of hazardous substances from the Landfill into the surrounding environment rather than the initial placement of waste into the Landfill. The Court adopted the City's suggestion and entered an Order staying discovery, requiring the City to submit an expert report in support of its theory, and setting a briefing schedule for the parties to address their respective positions on coverage.

The issues raised in the current motion are: (1) whether the "sudden and accidental" exception to the pollution exclusion clauses should be applied to the initial placement of pollutants into the Landfill in accordance with the Michigan Supreme Court's decision in *Protective National Insurance Co. of Omaha v. City of Woodhaven*, 438 Mich. 154, 476 N.W.2d 374 (1991), or to the discharge of pollutants from the Landfill into the environment in accordance with the Michigan Court of Appeals' decision in *County of Kent v. Home Insurance Co.*, 456 Mich. 858, 568 N.W.2d 671 (1997); and (2) whether an objective or subjective standard must be used in analyzing the insured's actions under the "sudden and accidental" language of the pollution exclusion.[4] The Court will treat the City's motion as a motion under Fed. R.Civ.P. 56.

### Discussion

As discussed above, the purpose of the instant motion is to determine whether the "sudden and accidental" pollution exclusion clauses at issue should be applied with reference to the disposal of waste into the Landfill or the subsequent release of hazardous substances from the Landfill into the surrounding environment. The City concedes that if the "sudden and accidental" language applies to the disposal of hazardous substances into the Landfill, there is no coverage under the policies because there is no evidence that pollutants were discharged into the Landfill as a result of a "sudden and accidental" event. On the other hand, if the relevant discharge was from the Landfill into the surrounding soil and groundwater, the parties will focus their discovery on the issue of whether there were any "sudden and accidental" discharges from the Landfill into the environment.

### II. Initial Discharge or Subsequent Migration?

The Court's analysis of this issue begins with the Michigan Supreme Court's decision in *Upjohn Co. v. New Hampshire Insurance Co.*, 438 Mich. 197, 476 N.W.2d 392 (1991). In that case, the court was confronted with the issue of whether a pollution exclusion which contained the "sudden and accidental" language, like the pollution exclusions in the policies at issue

4. Although the parties discuss the trigger of coverage issue, the Court finds it unnecessary to address that issue at this juncture. The Court does note, however, that the parties agree that the trigger of coverage analysis should be conducted under the "injury in fact" test set forth in *Gelman Sciences, Inc. v. Fidelity & Casualty Co.*, 456 Mich. 305, 572 N.W.2d 617 (1998).

in this case do, was unambiguous. The court concluded that the language of the exclusion was clear and unambiguous, explaining that

> when considered in its plain and easily understood sense, "sudden" is defined with a "temporal element that joins together conceptually the immediate and the unexpected." The common, everyday understanding of the term "sudden" is " 'happening, coming, made or done quickly, without warning or unexpectedly; abrupt.' " "Accidental" means "[o]ccurring unexpectedly and unintentionally; by chance."

*Upjohn*, 438 Mich. at 207–08, 476 N.W.2d at 397 (citations omitted). Applying the language of the exclusion to the facts before it, the court concluded that coverage was barred because Upjohn had sufficient information from which it could conclude that chemical by-product was escaping from its tank as a result of a leak, and based on that information, Upjohn could expect that the release would continue to occur until Upjohn stopped using the tank. *See id.* at 212–13, 476 N.W.2d at 400.

■ In *Protective National Insurance Co. of Omaha v. City of Woodhaven*, 438 Mich. 154, 161, 476 N.W.2d 374 (1991), a companion case to *Upjohn*, the Michigan Supreme Court found that the "sudden and accidental" language of the pollution exclusion in the insurance policy issued to the city precluded coverage of a claim against the city by a plaintiff for damages sustained as a result of exposure to chemical pesticide sprayed by the city. The Michigan Supreme Court rejected the court of appeals' reasoning that while the initial discharge of the pesticide was obviously intentional, the dispersal of the pesticide by a sudden gust of wind to the area where it came in contact with the plaintiff was a sudden and accidental event. Instead, the Michigan Supreme Court concluded that "the discharge, dispersal, release, or escape to which both the exclusion and the exception refer is the initial discharge, dispersal, release, or escape into the atmosphere and not the subsequent migration." *City of Woodha-*

*ven*, 438 Mich. at 162, 476 N.W.2d at 377. The court held that any migration after the initial release of the pesticide was "irrelevant" because the language of the exclusion focused on the discharge into the environment, and because the release of pesticide was intentional it could not have been accidental as a matter of law. *See id.* at 162, 476 N.W.2d at 377.

■ The Michigan Court of Appeals had occasion to apply the initial discharge rule announced in *City of Woodhaven* in *Traverse City Light and Power Board v. Home Insurance Co.*, 209 Mich.App. 112, 530 N.W.2d 150 (1995). In that case, the plaintiff-insured, Traverse City Light and Power Board, disposed of fly ash at an abandoned gravel pit between 1975 and 1987. In 1987, the Michigan Department of Natural Resources ("MDNR") notified the plaintiff that continued use of the site for fly ash disposal would violate state law because the fly ash could leach into the underground aquifer when combined with precipitation. In 1988, the MDNR issued the plaintiff a cease and desist order requiring the plaintiff to cease using the gravel pit and to remediate groundwater contamination. The plaintiff requested that the defendant, Home Insurance Company, provide coverage under three policies it had issued. The defendant denied coverage on the basis of pollution exclusion in the policies. Two of the policies contained a pollution exclusion which provided, "this exclusion does not apply if such discharge, dispersal, release or escape is neither expected nor intended by the insured." *Id.* at 114, 530 N.W.2d at 152. The pollution exclusion in the other policy contained the "sudden and accidental" language. In analyzing the "neither expected nor intended" language, the court determined that the insured's actions must be analyzed under a subjective standard. *See id.* at 118, 530 N.W.2d at 153. However, the court found that an objective standard was appropriate under the "sudden and accidental" language because the language focused on the release rather than on the knowledge, intent, or expectation of the

insured. *See id.* at 119, 530 N.W.2d at 153. Applying the initial discharge rule of *City of Woodhaven,* the court held that both exclusions applied because the plaintiff had expected and intended to discharge fly ash into the gravel pit over a twelve year period and the disposal of fly ash was neither sudden nor accidental. *See id.* at 119, 530 N.W.2d at 153–54.

In *Kent County v. Home Insurance Co.,* 217 Mich.App. 250, 551 N.W.2d 424 (1996), the court of appeals distinguished the *City of Woodhaven* and *Traverse City* decisions and held that although contaminates were intentionally placed in a landfill, the relevant discharge for purposes of the pollution exclusion was the discharge from the landfill into the environment. For the sake of clarity, it should be noted that some of the insurance policies in that case contained pollution exclusions with the "sudden and accidental" language and other policies contained pollution exclusions with the "neither expected nor intended" language. With regard to the policies containing the "sudden and accidental" language, the court found that there was no coverage because there was no evidence that either the initial placement of waste in the landfill or the subsequent migration of pollutants from the landfill into the groundwater had the required temporal element of suddenness. *See Kent County,* 217 Mich.App. at 263–64, 551 N.W.2d at 430. As for the policies containing the "neither expected nor intended" language, the court found that the relevant discharge was the migration of the contaminants from the landfill into the environment. The court reasoned that

> where the contaminants are placed in a container, the focus is on the release of the contaminants into the environment from the container. Here, the initial placement of the contaminants was into an engineered landfill that was thought to be the equivalent of a container, but which had no artificial barrier.

*Id.* at 269, 551 N.W.2d at 432–33.

The evidence in *Kent County* demonstrated that the county's landfill was state of the art for its time, licensed, and believed to be capable of containing the waste placed in it. The court contrasted those facts with the facts in *Traverse City,* where the gravel pit was not engineered to be a contained area and the plaintiff disposed of its waste in the gravel pit without any regulatory approval. *See id.* at 270–71, 551 N.W.2d at 433. The court summarized its holding as follows:

> In summation, application of the pollution exclusion requires that the court focus on the initial discharge into the environment. If that discharge is intended, there is no coverage, notwithstanding that the damage may have been unintentional. If waste materials are placed in a contained area or structure and later escape into the environment, the latter discharge is the relevant discharge. In the instant case, the relevant discharge is the release of the pollutants from the landfill. We therefore remand for a determination whether plaintiff either expected or intended the discharge, dispersal, release, or escape of contaminants or pollutants into the environment from the Sparta landfill.

*Id.* at 288, 551 N.W.2d at 441–42.

The parties dispute whether the *Kent County* rationale applies to pollution exclusions that contain the "sudden and accidental" language. The City contends that the rationale applies to both types of clauses if the facts show that the contaminants were placed into a licensed landfill that was believed to be adequate to contain its contents, whereas Defendants contend that the rationale only applies to pollution exclusions that contain the "neither expected nor intended language." The Michigan Supreme Court declined to address the issue in *Kent County* when it denied the application and cross application for leave to appeal and vacated the portion of the court of appeals judgment holding that the "sudden and accidental" exception was not triggered. *See County of Kent v. Home Ins. Co.,* 456 Mich. 858, 568 N.W.2d 671 (1997). The court remanded the case to

the trial court for determination of whether the discharges from the landfill into the environment were "sudden and accidental" because it found that the trial court did not reach the issue.

In a more recent case involving a pollution exclusion containing the "sudden and accidental" language, the Michigan Court of Appeals held that the proper focus in determining whether the exception to the exclusion applied was the discharge of contaminants from the landfill into the environment. *See South Macomb Disposal Auth. v. American Ins. Co.*, 225 Mich.App. 635, 672, 572 N.W.2d 686, 703 (1997). The facts in that case demonstrated that the landfills at issue, like the landfill in *Kent County*, had been designed consistent with then-contemporary standards and were approved by the DNR. *See id.* In addition, the court also noted that experts had testified that the plaintiff had responded sufficiently to outbreaks of contaminants under the applicable standards.

The *South Macomb* court also held that in applying the "sudden and accidental" exception, it is proper to separate discrete, identifiable discharges apart from the larger pattern of leakage if the evidence demonstrates isolated discharges that are distinct from the "overall continuous leaking of the landfills." *Id.* at 681, 572 N.W.2d at 706. The evidence in that case established that (1) certain outbreaks at the landfill were identifiable and isolated; (2) the outbreaks were arguably different in kind from the overall leakage through the porous bottoms of the landfills; (3) specific damage arguably could have been traced to the outbreaks; and (4) the plaintiff presented evidence of their occurrence. *See id.* at 679, 572 N.W.2d at 706.[5]

Based upon the *Kent County* and *South Macomb* cases, the Court concludes that for purposes of the "sudden and accidental" exception, the relevant release in this case will be the release from the Landfill into the environment *if* the City is able to establish that the Landfill was licensed by the State of Michigan and designed and constructed in accordance with then-contemporary standards in order to contain the contents that were to be placed in the Landfill. *See Kent County*, 217 Mich.App. at 270, 551 N.W.2d at 433. Moreover, in order to demonstrate that the discharge from the Landfill comes within the "sudden and accidental" exception, the City must present evidence of isolated discharges "apart from the overall continuous leaking of the [L]andfill[ ]." *South Macomb*, 225 Mich.App. at 681, 572 N.W.2d at 707; *see also Aetna Cas. & Surety Co. v. Dow Chem. Co.*, 10 F.Supp.2d 771, 777 (E.D.Mich.1998) (mem. op.) (noting that "a blanket refusal [by an insured] to separate out evidence of discrete, isolated polluting events that are alleged to be sudden and accidental from allegations of overall polluting and a parade of horribles would expand the pollution exclusion and swallow the exception").[6]

## B. Objective or Subjective Analysis

The City contends that when determining whether the releases from the Landfill were "sudden and accidental," the Court must look to the City's subjective intent. The Court rejects this argument. The case cited by the City in support of its argument, *Arco Industries Corp. v. American Motorists Insurance Co.*, 448 Mich.

---

5. The court ultimately found that the evidence pertaining to two of the three outbreaks established that they were not accidental, because they occurred as a result of conditions that are normally present in landfills. *See South Macomb*, 225 Mich.App. at 684–86, 572 N.W.2d at 708–09. The court found that there was evidence to support a conclusion that the remaining outbreak was accidental, and remanded the issue to the trial court for further factual development.

6. With regard to this requirement, the Court finds that the City's expert witness's report attached to its motion fails to show the existence of isolated discharges apart from the overall pattern of leaking at the Landfill. Furthermore, despite the expert's characterization of leachate releases as "quick," such a characterization does not render ongoing leachate releases that occur several times each year "sudden."

395, 531 N.W.2d 168 (1995), dealt with the interpretation of the term "occurrence" in an insurance policy rather than the "sudden and accidental" language under a pollution exclusion. *See Arco Indus.*, 448 Mich. at 403–04, 531 N.W.2d at 172–73. The court found in that case that an "occurrence," which is defined as an accident, must be viewed from the standpoint of the insured. *See id.* at 405, 531 N.W.2d at 173. The holding in *Arco Industries* did not address a pollution exclusion and therefore is not applicable in this case. Instead, as noted above, the "sudden and accidental" language is properly analyzed under an objective standard. *See Traverse City,* 209 Mich.App. at 119, 530 N.W.2d at 153.

### *Conclusion*

For the foregoing reasons, the Court will deny the City's motion with regard to its contention that a subjective standard should be used in applying the "sudden and accidental" pollution exclusion clauses at issue. The Court will deny the remainder of the motion without prejudice so that the City or Defendants may raise the unresolved issues addressed by the Court in this Opinion after conducting further discovery. Lastly, the Court will issue a new scheduling order with revised discovery deadlines.

An Order consistent with this Opinion will be entered.

### *ORDER*

In accordance with the Opinion entered on this date,

**IT IS HEREBY ORDERED** that Plaintiff's Motion For Partial Summary Judgment (docket no. 69) is **DENIED** with regard to Plaintiff's contention that a subjective standard should be used in applying the pollution exclusions in the insurance policies issued by Defendants. The proper standard is an objective standard.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Partial Summary Judgment with respect to whether the relevant release for purposes of the pollution exclusions is the release from the Landfill into the environment is **DENIED WITHOUT PREJUDICE** in light of the existence of genuine issues of material fact with regard to whether the Landfill was designed and constructed as a state of the art facility intended to contain the waste placed in the Landfill. In addition to presenting such evidence, to avoid the pollution exclusions Plaintiff must submit evidence of one or more separate, identifiable releases apart from the overall pattern of continuous leaking from the Landfill into the environment, as well as evidence demonstrating that such releases were accidental.