Although I concur with the majority in most of its decision, I disagree with its disposition of Goodyear's fourth assignment of error. The majority recognized that there are two diverse interpretations of the term "discharge" in the expected/intended pollution exclusion. Unlike the majority, however, I am more persuaded by the position taken by Goodyear.
Courts around the country seem to agree that, when pollutants are sealed in containers such as gasoline tanks, tanker cars, or oil drums, the focus of the exclusion is not upon the initial placement of the chemical in the container, but on a subsequent rupture and seepage that caused contamination. See, e.g., St.Paul Fire and Marine Ins. Co. v. Warwick Dyeing (C.A.1, 1994),26 F.3d 1195, 1204.
The disposal of wastes into containment ponds or landfills complicates the issue. Although some courts view the disposal at a landfill or dump as an intentional release of wastes onto the land, see, e.g., Syntex Corp. v. Lowsley-Williams Cos.
(Cal.App. 1998), 79 Cal.Rptr.2d 371, 378-379, others view it as an intended placement into containment. I am more persuaded by the latter view that likens a landfill to a container and recognizes that, although wastes were intentionally placed in a landfill or containment pond, it was expected and intended at that time that the wastes would be contained, just as if they had been placed in a drum or tank. See, e.g., Albion v. Guaranty Natl. Ins. Co.
(W.D.Mich. 1999), 73 F. Supp.2d 846, 851.
Goodyear's position, that the relevant discharge is the migration of pollutants from the landfill, is supported by the decisions of the supreme courts of Washington, Alabama, and Colorado. See Compass Ins. Co. v. Littleton (Colo. 1999),984 P.2d 606; Alabama Plating Co. v. U.S. Fidelity and Guaranty Co.
(Ala. 1996), 690 So.2d 331; Queen City Farms, Inc. v. Central Natl.Ins. Co. (Wash. 1994), 882 P.2d 703.[11]
The Alabama and Colorado Supreme Courts explicitly followed the reasoning set forth by the Washington Supreme Court in QueenCity Farms. The court in Queen City Farms focused on the plain meaning of all the terms used in the exclusion: "discharge, dispersal, release, or escape." Although the court noted that the construction of the terms could arguably include the dumping of wastes onto the land, the ordinary meaning of these terms more appropriately encompasses the migration of pollutants from the disposal site. Each of the terms connotes a release from confinement or the dispersal from a fixed place. "All of the terms carry the connotation of the issuance of a substance from a state of confinement; none of the terms is normally used to describe the placement of a substance into an area of confinement." Queen City Farms, supra, at 718-719, quotingSylvester Bros. Dev. Co. v. Great Cent. Ins. Co. (Minn.App. 1992),480 N.W.2d 368, 373-374.
The Queen City Farms reasoning is perhaps even more applicable to the specific language used in the expected or intended pollution exclusion. Again, the terms "discharge," "release," and "escape" used in the sudden and accidental exception to the standard pollution exclusion, are commonly defined to encompass the concept of a release from a state of containment. The addition of the terms "emission" and "seepage" incorporate the concept of a gradual leakage or discharge through cracks or a small outlet. See Black's Law Dictionary (6 Ed. 1990) 742, 2056. These terms seem to more appropriately describe a seepage of pollutants from a landfill (an intended place of containment) than a disposal of wastes in a landfill. In KentCounty v. Home Ins. Co. (Mich.App. 1996), 551 N.W.2d 424, 430, a Michigan appellate court construed the language of the expected or intended pollution exclusion and, likening a landfill to a container, held that the focus of the exclusion is the release from the landfill into the environment, not the initial placement there.
Focusing on the seepage of chemicals from the landfill, Travelers would be entitled to a directed verdict on this exclusion only if reasonable minds could only conclude that Motor Wheel expected or intended the seepage at the time it sent its wastes for disposal. Unlike many of the grounds asserted for directed verdict, this ground did not involve a condition of coverage that Goodyear was required to prove. Instead, it involved a policy exclusion and Travelers bore the burden of proving that it applied. See Bonanza of Cleveland, Inc. v.Fairfax Underwriters Services, Inc. (1981), 5 Ohio App.3d 190,192. Goodyear presented evidence that Motor Wheel's Delaware plant complied with industry standards in its disposal of plant wastes and that it was believed at that time that landfills would contain wastes that were disposed there. There was absolutely no evidence before the trial court that Motor Wheel had any reason to expect, in the 1960s, that its plant wastes disposed in the landfill would seep into the surrounding environment.
Therefore, the expected or intended pollution exclusion was not a valid basis for a directed verdict on these policies. I would sustain Goodyear's fourth assignment of error and also remand the claims stemming from the Army Creek Landfill based on the 1971 through 1976 primary policies.
[11] Each of these cases again construes "discharge, release, escape" within the context of the sudden and accidental exception to the pollution exclusion.